WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Jose Alberto Effio, | ) | No. cv-08-1522-PHX-ROS |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| FedEx Ground Package, et al., | ) | |
| Defendants. | ) | |

Defendant FedEx Ground Package System, Inc ("FedEx") moves to dismiss the Complaint, or, in the alternative, to stay proceedings and compel arbitration of the claims alleged. (Doc. 7). Plaintiff moves for leave to file sur-reply (Doc. 15). For the reasons stated herein, both motions will be denied.

## BACKGROUND

Plaintiff contracted with FedEx as a driver for their package delivery services. As a condition of employment he signed the FedEx Home Delivery Standard Contractor Operating Agreement ("Agreement") on March 1, 2007. Plaintiff's Agreement was terminated on April 19, 2008. Plaintiff brings suit for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing.

The Agreement contained an arbitration clause which is the subject of the instant dispute. That clause stated:

**9.3 Arbitration of Asserted Wrongful Termination.** In the event FHD acts to terminate this Agreement (which acts shall include any claim by Contractor of constructive termination) and Contractor disagrees with such termination or asserts that the actions of FHD are not authorized under the terms of this Agreement, then each such disagreement (but no others) shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association (AAA) in accordance with the terms and conditions set forth in Addendum 7 to this Agreement.

Addendum 7 consisted of two pages at the end of the Agreement laying out a variety of specific arbitration provisions, including limitations on damages and discovery and a 90-day time limit to request arbitration after termination.

## CHOICE OF LAW

A federal court sitting in diversity applies the forum state's choice of law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Orr v. Bank of Am., 285 F.3d 764, 772 n.4 (9th Cir. 2002). Arizona courts apply the rules set forth in the Restatement (Second) of Conflicts (1972) ("Restatement"). Bryant v. Silverman, 703 P.2d 1190, 1191 (Ariz. 1985).

Here, the parties have a contractual provision which states "[t]his Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania." "When the parties choose the law of a particular state to govern their contractual relationship and the chosen law has some nexus with the parties or the contract, that law will generally be applied." Nanini v. Nanini, 802 P.2d 438, 441 (Ariz. Ct. App. 1990). More specifically, the Restatement provides that that law will apply if "the particular issue is one which the parties could have resolved by an explicit provision in their agreement." Restatement (Second) of Conflict of Laws, § 187 (1988). Otherwise, the law chosen will be applied unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

1 Id. As the issue of unconscionability could not have been resolved through a contractual
2 provision, Pennsylvania law will apply unless this case falls under one of the two exceptions
3 provided by the Restatement.

4 Plaintiff argues that Pennsylvania, the state chosen by the contract, has no substantial
5 relationship to the parties or transaction and that there is no reasonable basis for applying
6 Arizona law. He also argues that Arizona has a fundamental policy interest in regulating
7 conduct within its borders, applicable here because the contract was negotiated and signed
8 in Arizona, Plaintiff lives in Arizona, and all deliveries under the contract were made in
9 Arizona.[1]

10 As to exception (a), Defendant responds by pointing out that FedEx's corporate
11 headquarters and principle place of business are in Pennsylvania and that employees,
12 including Plaintiff, travel to Pennsylvania for training. Similarly, if a contract is to be
13 terminated (as Plaintiff's was) it is sent to Pennsylvania for review and decision making, and
14 it was in Pennsylvania that Plaintiff's settlement was calculated. Finally, the scanners used
15 by drivers instantly send pick-up and delivery information to Pennsylvania.[2]

16 The Court agrees with Defendant; while much of the activity giving rise to the case
17 was centered in Arizona, Pennsylvania's relationship with the events cannot be considered

---

[1] For the same reasons, Plaintiff argues – uncontroversially, the Court believes – that Arizona would be the proper forum under §188 had the parties not had a provision to the contrary. Section 188 of the Restatement provides that "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties" given the choice of law principles in §6. Those principles include the policies of the forum and other interested states, the relative interests of those states, the protection of justified expectation, and certainty, predictability and uniformity of result.

[2] Plaintiff has filed a separate Motion to File Sur-reply (Doc. 15), arguing that Defendant introduced new legal arguments for the first time in its Reply and supporting Affidavit which presents these facts regarding FedEx's activities in Pennsylvania. The Court disagrees. Where Plaintiff exceeds the scope of the pleadings in his Response, Defendant may then present new evidence in his Reply. Further, Defendant has not asserted new grounds for dismissal and instead was merely responding on the topic of choice of law which was first asserted in Defendants' Motion, then expounded upon in Plaintiff's Response.

1  insubstantial and, given the fact that Defendant has its principal place of business in
2  Pennsylvania and structures many of its day-to-day operations around Pennsylvania, it cannot
3  be said that "there is no other reasonable basis for the parties' choice."

4  As to exception (b), Defendant argues that "[d]etermining the enforceability of an
5  arbitration agreement under the law of Pennsylvania is not contrary to any fundamental
6  policy of the State of Arizona since both states strongly favor arbitration."[3] Plaintiff does not
7  dispute this and it bears against a finding that exception (b) applies. Both Arizona and
8  Pennsylvania have an interest in governing the behavior of entities operating within it, and
9  in protecting or vindicating the right of their citizens. Because the contract was negotiated,
10 signed, and largely carried out in Arizona, Arizona's interest probably outweighs
11 Pennsylvania, even if daily business operations relating to the contract were carried out in
12 Pennsylvania. However, Plaintiffs have not shown that this relatively minor difference in
13 interests would result in a decision that is contrary to a fundamental policy of Arizona.
14 Accordingly, Pennsylvania law will be applied.

15                                    ANALYSIS

16 Under Pennsylvania law, "[w]hen parties agree to arbitration in a clear and
17 unmistakable manner, the court will make every reasonable effort to favor such agreements."
18 DiLucente Corp. v. Penn. Roofing Co., Inc., 655 A.2d 1035, 1038 (Pa. Super. Ct. 1995).
19 "When one party to an arbitration agreement seeks to prevent another from proceeding to
20 arbitration, judicial inquiry is limited to determining (1) whether a valid agreement to
21 arbitrate exists between the parties and, if so, (2) whether the dispute involved is within the
22 scope of the arbitration provision. Smith v Cumberland Group, Ltd., 687 A.2d 1171 (Pa.
23 Super. Ct. 1997). While the plain terms of the contract provision in question here require

---

[3] This, the Court believes, is the real question at issue rather than, as Plaintiffs seem to suggest, which state has the greater interest in the transaction in question. See, e.g., Cardon v. Cotton Lake Holdings, 841 P.2d 198, 209 (Ariz. 1992) (concluding that the parties' choice of law provision stands because Arizona did not have a strong public policy favoring deficiency judgments that would be frustrated by application of California law).

- 4 -

1 arbitration, Plaintiff argues that this contract provision is unconscionable because it is a
2 contract of adhesion and the terms are contrary to the adhering party's "reasonable
3 expectations."

4 "Unconscionability has generally been recognized to include an absence of
5 meaningful choice on the part of one of the parties together with contract terms which are
6 unreasonably favorable to the other party." Williams v. Walker-Thomas, "[A] contract term
7 is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in
8 the acceptance of the challenged provision and the provision unreasonably favors the party
9 asserting it." Salley v. Option One Mortg. Corp., 925 A.2d 115, 119 (Pa. 2007) (citing
10 Denlinger, Inc. v. Dendler, 608 A.2d 1061, 1068 (Pa. Super. Ct. 1992). "The aspects
11 entailing lack of meaningful choice and unreasonableness have been termed procedural and
12 substantive unconscionability, respectively." Id. (citing 17A Am. Jur. 2d Contracts § 278
13 (2006)). The burden of proof for demonstrating both elements falls on the party challenging
14 the agreement, and at least one court has held that both elements must be met before a finding
15 of unconscionability can be made. Id. at 119-120. "[T]he ultimate determination of
16 unconscionability is for the courts," though factfinding may be necessary. Id. at 120.

17 Parties have a high bar to meet in demonstrating that an arbitration agreement is
18 unconscionable. "[O]ur supreme court, and the federal courts of Pennsylvania, have refused
19 to hold contracts unconscionable simply because of a disparity in bargaining power."
20 Denlinger, 608 A.2d at 1067 (internal citations and quotations omitted). "[T]he United
21 States Supreme Court has expressed the concern that allowing a party to invoke judicial
22 review to challenge the parties' overall agreement (and therefore also an arbitration
23 component) would contravene Congress' purpose to facilitate a just and speedy resolution
24 of controversies that is not subject to delay and/or obstruction in the courts." Id. at 120
25 (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967)).

26     i. Procedural Unconscionability

27 Procedural unconscionability "pertains to the process by which an agreement is
28 reached and the form of an agreement, including the use therein of fine print and convoluted

1 or unclear language." Harris v. Green Tree Fin. Corp., 183 F.3d 173, 181 (3d Cir. 1999) (citing E. Allan Farnsworth, Contracts § 4.28 (2d ed. 1990)). Courts have rejected arguments of procedural unconscionability where the language of the clause was clear and unambiguous, the party was not coerced into accepting the contract, and where "[r]eading the agreement would have disclosed the arbitration clause." McCullough v. Shearson Lehman Bros, Inc., 1988 U.S. Dist. Lexis 1563 at * 9 (W.D. Penn. 1988).

A contract of adhesion is not per se unconscionable. "Once a contract is deemed to be one of adhesion, its terms must be analyzed to determine whether the contract as a whole, or specific provisions of it, are unconscionable." Denlinger, 608 A.2d at 1067. "Inequality in bargaining power, alone, is not a valid basis upon which to invalidate an arbitration agreement." Harris v. Green Tree Fin. Corp., 183 F.3d 173, 183 (3d Cir. 1999). However "[p]rocedural unconscionability is generally found where the agreement is a contract of adhesion." Ostroff v. Alterra Healthcare Corp., 433 F.Supp. 2d 538, 543 (E.D. Pa. 2006) (citing Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 264 (3d Cir. 2003)).

Here, Defendant does not dispute that the contract is a contract of adhesion. The agreement was apparently presented to Plaintiff without explanation or opportunity for discussion, and the contract was a long one. It is true that the arbitration agreement was included in the main body of the contract in a provision clearly labeled, in bold type, "Arbitration of Asserted Wrongful Termination." The type size was the same as in the rest of the agreement. The language involved was clear and unambiguous, stating both that arbitration would be required and specifying the type of claim for which it would be required. But the provision also referenced Addendum 7, in which many of the specific terms and conditions relating to arbitration were expounded upon in rather technical language. It is, indeed, unrealistic to believe that a non-lawyer could review in detail the two pages of detailed provisions regarding arbitration and fully understand the significance of the terms therein, particularly when he is given no explanation of the Agreement or opportunity to ask questions relating to it and is likely in immediate need of employment to boot.

This, given the general presumption that contracts of adhesion are procedurally unconscionable, is sufficient for this Court to conclude that procedural unconscionability exists.

ii. Substantive Unconscionability

Plaintiff argues that the arbitration clause is substantively unconscionable because: (a) Plaintiff's claims resulting from termination of the agreement are subject to arbitration while Defendants' are not; (b) Plaintiff has only 90 days after termination to mail written notice of demand for arbitration to FedEx and the American Arbitration Association and has otherwise waived any claims; (c) neither party is entitled to written or deposition discovery except with respect to damages; (d) the arbitrator has no authority to allocate or apportion attorneys' fees or other fees; (e) Plaintiff's remedies and damages are limited by the Agreement and subject to decisions by FedEx; (f) the arbitrator has no authority to award punitive damages, and; (g) the Agreement expressly forbids the arbitrator to explain the basis for an award.

Defendant does not argue that the arbitration clause does not favor its own interests. However, it does argue that it does not rise to the level of harm required for substantive unconscionability, noting that "although it is possible, rarely will a commercial contract or term be found to be unconscionable." Denlinger, Inc., 608 A.2d at 178.

Defendant, however, misinterprets that finding. Commercial contracts will rarely be found unconscionable where "a contract provision affects commercial entities with meaningful choices at their disposal." Id. Here, Plaintiff was an employee required to sign a contract as a condition of employment. Common as such a scenario might be, it is scarcely the sort of informed choice two entities with experience and equal bargaining power might make when they sign a contract. The contractual provisions pointed to by Plaintiff do, indeed, slant the arbitration provision heavily towards Defendant, particularly in the troublesome limitations on the length of time Plaintiff has to bring a claim after termination and limits on damages. Similarly, while the discovery provision is facially neutral, it seems exceedingly likely that lack of access to internal FedEx documents or FedEx employees will to pose a

1 greater problem for Plaintiff than any similar lack of access would pose to Defendant, who, 2 presumably, is already in possession of documents and discussion regarding Plaintiff's 3 termination. Others, such as the attorneys' fees provision, seem less troublesome; there is 4 no indication that Plaintiff could have recovered attorneys' fees in the absence of such a 5 provision.

6 In some states lack of mutuality has been fatal. See, e.g., Armendariz v. Foundation 7 Health Psychare Servs., 6 P.3d 669, 692 (Cal. 2000). However, Pennsylvania has not made 8 such a finding and in fact has explicitly noted that "the United States Supreme Court has 9 made clear that parties who agree to arbitrate some claims may exclude others from the scope 10 of the arbitration agreement." Salley, 925 A.2d at 128 (citing Dean Witter Reynolds v. Byrd, 11 470 U.S. 213, 221 (1985)). Similarly, placing limitations on damages has also been upheld, 12 albeit in commercial contexts, rather than between an employer and employee. See, e.g., 13 Borden Inc. v. Advent Ink Co., 701 A.2d 255, 264 (Pa. Super. Ct. 1997) ("In commercial 14 settings, a limitation of damages clause will rarely be found unconscionable.").

15 Conversely, substantive unconscionability has been found where there are severe 16 restrictions on discovery, Ostroff, 433 F. Supp. 2d at 543 (citing Walker v. Ryan's Family 17 Steak Houses, Inc., 400 F.3d 370, 387-88 (6th Cir. 2005)), curtailed judicial review, id. 18 (citing Hooters of America, Inc. v. Phillips, 39 F. Supp.2d 582, 614 (D.S.C. 1998) (3d Cir. 19 2003)), or limitations on remedies, id. (citing Morrison v. Circuit City Stores, Inc., 317 F.3d 20 646, 670-71 (6th Cir. 2003)).

21 This case did not arise between two commercial entities, as many of the cases cited 22 above did. Instead, an employee was required to sign onto a provision highly unfavorable 23 to himself as a condition of employment. The arbitration clause does not disadvantage 24 Plaintiff in just one area, but contains a number of unfavorable provisions, creating a 25 cumulative effect that multiplies several times over the Agreement's slant towards 26 Defendant. Ultimately, this is sufficient to judge the arbitration provision substantively 27 unconscionable.

28 Accordingly,

**IT IS ORDERED** Defendant's Motion to Dismiss (Doc. 7) is **DENIED**.

**IT IS FURTHER ORDERED** Plaintiff's Motion to File a Sur-Reply (Doc. 15) is **DENIED**.

DATED this 20th day of March, 2009.

_____
Roslyn O. Silver
United States District Judge